IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIFFANY MARIE BRIERE,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. 1:21-CV-02323-SO<br><br>JUDGE SOLOMON OLIVER, JR.<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JENNIFER DOWDELL<br>ARMSTRONG<br><br>**REPORT AND RECOMMENDATION** |

## I.    INTRODUCTION

Plaintiff Tiffany Marie Briere ("Ms. Briere") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

On February 24, 2020, Ms. Briere applied for DIB and SSI. (TR 281-291). In her disability assessment, Ms. Briere listed the following physical and mental conditions that limited her ability to work: polycystic ovarian syndrome, supraventricular tachycardia, POTS, chronic hypertension, hidradenitis suppurativa, bipolar disorder, and schizoaffective disorder. (TR 309). Ms. Briere also noted that she was experiencing chronic fatigue syndrome and pain associated with fibromyalgia. (TR 316).

The Social Security Administration ("SSA") denied Ms. Briere's applications initially and upon reconsideration. (TR 148-149; TR 171-72). Ms. Briere requested a hearing before an administrative law judge ("ALJ"). (TR 218). The ALJ held a telephonic hearing on February 23, 2021, at which Ms. Briere was represented by counsel. (TR 115). Ms. Briere testified, as did an impartial vocational expert ("VE"). On March 26, 2021, the ALJ issued a written decision finding that Ms. Briere is not disabled. (TR 38). The ALJ's decision became final on October 12, 2021, when the Appeals Counsel declined further review. (TR 1).

On December 10, 2021, Ms. Briere filed her Complaint, challenging the Commissioner's final decision. (ECF Doc. No. 1). Ms. Briere asserts the following assignments of error:

(1) The ALJ's decision is not supported by substantial evidence in the absence of some explanation of whether Plaintiff's fibromyalgia and the resulting symptoms and functional limitations therefrom medically equals the listings.

(2) The ALJ's decision is not supported by substantial evidence in the absence of some explanation of whether Plaintiff's chronic fatigue syndrome and the resulting symptoms and functional limitations therefrom medically equals the listings.

(ECF Doc. No. 8, PageID # 1657, 1659).

### III. BACKGROUND

#### A. Personal, Educational, and Vocational Experience

Ms. Briere was born in August 1989 and was 28 years old on the alleged onset date. (TR 281). Ms. Briere has never married. (TR 281). She has two children under the age of 18. (TR 282). At the time of her application, she had attended two years of college but had not yet received a degree. (TR 310). She has prior work experience as a caregiver, a tutor, and a retail salesclerk. (TR 139, 310).

#### B. Relevant Hearing Testimony

##### 1. Ms. Briere's Testimony

Ms. Briere testified that she has not worked since the alleged onset date of November 1, 2017. (TR 122). Ms. Briere also testified that she was taking online classes toward a bachelor's

degree, but that she stopped because of the pandemic and because her anxiety "got really bad." (TR 122-23). Ms. Briere testified that she intends to continue her education after she gets her anxiety more under control. (TR 123).

 Ms. Briere testified that she is on medication for her schizoaffective disorder, which "does its job," but that she continued to experience hallucinations two to three times a week. (TR 124-126). Ms. Briere further testified that the hallucinations affected her in bad ways, and that she had been forced to stop driving because of them. (TR 125). Ms. Briere also testified that her anxiety and depression went "hand-in-hand" with her hallucinations. (TR 126). Ms. Briere testified that when she has down days with her depression, it is difficult for her to get out of bed, and that she does not want to clean or get dressed. (TR 128). Ms. Briere further testified that she experiences manic episodes "a couple times a month." (TR 129).

 With respect to physical issues, Ms. Briere testified that she experiences "constant pain" in her lower back and down both legs. (TR 130). Ms. Briere testified that she sleeps with a heating pad and that she uses a cane daily as well. (TR 131). Ms. Briere also testified that she has a TENS unit for her back pain and that she takes over-the-counter Motrin. (TR 131). Ms. Briere testified that she has difficulty standing in place for five minutes or more and sitting for ten minutes or more. (TR 132). Ms. Briere testified that when she is at home, she lays in a recliner, which is the position she finds to be most comfortable. (TR 133). Briere also testified that the cysts from her hidradenitis suppurativa are a "constant" issue and cause her "a lotta pain." (TR 134).

 Ms. Briere did not testify regarding any other medical conditions or impairments, such as her fibromyalgia or chronic fatigue syndrome. At the conclusion of her testimony, the ALJ asked her if there was "anything we haven't covered that you wanna make sure I'm aware of when I'm making my decision?" (TR 136). Briere responded, "No." *Id*.

### 2. *Arguments of Briere's Counsel*

The argument that Ms. Briere's counsel made to the ALJ was consistent with Ms. Briere's testimony. Ms. Briere's counsel argued that Ms. Briere "suffers from physical and mental health issues." (TR 121). With respect to mental health issues, Ms. Briere's counsel argued that Ms. Briere has "been dealing with bipolar, PTSD, and schizoaffective disorder." *Id*. With respect to physical issues, Ms. Briere's counsel argued that "the most important [thing she] basically [is] dealing with physically is hidradenitis suppurativa." *Id*. Ms. Briere's counsel argued that her hidradenitis suppurativa "actually meets with [Listing] 8.06." *Id*. Ms. Briere's counsel also argued that "she's been dealing with some lower back pain" and has "been noted to have tenderness and decreased range of motion," as well as "some tenderness in her thighs and low back." (TR 122). Ms. Briere's counsel further argued that "when you combine the physical pain along with the mental health issues, she likely wouldn't be able to sustain any successful competitive employment as well." *Id*. Significantly, Ms. Briere's counsel did not argue that any other medical conditions, including fibromyalgia or chronic fatigue syndrome, met or equaled a listing.

### 3. *Vocational Expert's Testimony*

The VE testified that Ms. Briere's prior work included work as a caregiver, a tutor, and a retail salesclerk. (TR 140-41). The ALJ asked the VE a hypothetical question regarding whether an individual with Ms. Briere's age, education, and vocational background could perform any of Ms. Briere's past work or other work in the national economy if the individual could lift or carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six hours out of an eight-hour day; occasionally climb ramps and stairs; frequently balance; only occasionally stoop, kneel, crouch, or crawl; was limited to tasks that did not require extended periods of close attention to detail; and required relatively static duties. (TR 141-42). The VE testified that an individual with those hypothetical restrictions could perform Ms. Briere's previous work as a retail

salesclerk, as well as other jobs in the national economy, such as inspector and hand packager, assembler of electrical accessories, and cafeteria attendant. (TR 142).

The ALJ next asked the VE how his opinion would change if the hypothetical individual was limited to standing or walking two hours out of an eight-hour workday. (TR 143). The VE testified that the individual could not perform any of the work Ms. Briere performed in the past but could perform jobs like food and beverage order clerk, surveillance system monitor, or lens inserter. (TR 143).

### C. Relevant Medical Evidence[1]

On April 9, 2019, Ms. Briere presented with complaints of constant low back and bilateral lower extremity pain with weakness and restlessness in both legs, along with chronic fatigue. (TR 561). The treating physician noted "[n]o evidence to suggest inflammatory arthritis as a cause of the patient's symptoms at this time." *Id*. The treating physician also noted a strong family history of fibromyalgia. *Id*. The treating physician stated that Ms. Briere "does not meet criteria for fibromyalgia by validated questionnaire, but may be more of a chronic fatigue type picture." *Id*.

On April 26, 2019, Ms. Briere presented with a chief complaint of low back pain and leg pain, with chronic fatigue syndrome and fibromyalgia. (TR 557). The treating physician noted that Ms. Briere "presents with impairments of decreased lumbar ROM, strength L>R, balance, gait impairments, decreased ability to perform functional activities, and pain." *Id*. The treating physician also noted functional limitations of "walking; stair negotiation; standing; heavy exertion; lifting; physical activities; recreational activities." (TR 558).

In June 2019, Ms. Briere complained of fatigue and daytime sleepiness. (TR 539). Ms. Briere participated in a sleep study, which indicated mild/moderate obstructive sleep apnea. *Id*.

---

[1] While the ALJ determined that Briere suffers from a number of severe impairments, Ms. Briere challenges only whether the ALJ erred by not assessing whether her fibromyalgia or chronic fatigue syndrome medically equal a listing. Therefore, this Report and Recommendation discusses only medical evidence relating to those conditions.

On August 22, 2019, Ms. Briere reported intermittent fatigue. (TR 496). On September 23, 2019, Ms. Briere again reported fatigue. (TR 476). On October 7, 2019, Ms. Briere presented with moderate tenderness over the thighs, which was attributed to lumbar radiculopathy or a flareup of fibromyalgia. (TR 454). On October 15, 2019, Ms. Briere complained of an inability to sleep despite feeling tired all the time, stating that she was getting only 2-3 hours of sleep a night. (TR 450). On January 6, 2020, Briere presented as positive for malaise/fatigue. (TR 446).

On February 20, 2022, Ms. Briere sought a second opinion regarding her lower back pain. (TR. 415). The treating physician noted diffuse pain and "all tender points" on examination. (TR. 421). The treating physician stated that Ms. Briere "does not meet criteria for fibromyalgia according to questionnaire but agree that she has overlap of chronic fatigue and fibromyalgia." *Id*.

In her February 24, 2020 disability report, Ms. Briere reported: "I am currently now [*sic*] working because of my pain that is associated with fibromyalgia, Chronic Fatigue Syndrome and hidradenitis suppurativa . . . . I sleep maybe 4 hours per night in which I have extreme fatigue. My fibromyalgia is painful." (TR 316). In a May 2020 function report, Ms. Briere stated that "[w]ith my fibromyalgia and chronic fatigue, I am exhausted all the time. My pain is so severe that I can't function. I can barely do household things, or even drive. My mental condition I have stopped driving all together." (TR 328).

On May 13, 2020, a state agency medical consultant, Dr. W. Scott Bolz, reviewed Ms. Briere's records and determined that she had severe impairments of fibromyalgia and chronic fatigue syndrome, but that none of Ms. Briere's impairments met or medically equaled a listing. (TR 149-59). On September 1, 2020, a second state medical consultant, Dr. Lynne Torello, also determined that Ms. Briere had severe impairments of fibromyalgia and chronic fatigue syndrome, but that none of Ms. Briere's impairments met or medically equaled a listing. (TR 172-82).

## IV. THE ALJ'S DECISION

The ALJ first determined that Ms. Briere met the insured status requirements of the Social Security Act from November 1, 2017 through December 31, 2019. (TR 43.) The ALJ then determined that Ms. Briere had not engaged in substantial gainful activity since November 1, 2017, the alleged onset date. *Id*. The ALJ also found that Ms. Briere had the following severe impairments: "obesity; PTSD; migraines; other disorder nervous system; hidradenitis suppurativa; disorders of the back, fibromyalgia; chronic fatigue syndrome; schizoaffective disorder; and anxiety. (TR 43-44). The ALJ further determined that those impairments "significantly limit the ability to perform basic work activities." (TR 44).

The ALJ next found that Ms. Briere did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. In making that determination, the ALJ found that Ms. Briere's hidradenitis suppurativa did not satisfy the requirements of Listing 8.06, that her degenerative disc disease did not meet Listing 1.04, that Ms. Briere did not meet Listing 1.02 for major dysfunction of a joint, and that her mental impairments did not, either singly or in combination, meet or equal the criteria of Listings 12.03, 12.04, 12.06, or 12.15. (TR 44-45). Ms. Briere does not challenge any of those determinations here.

The ALJ did not consider whether Ms. Briere's fibromyalgia or chronic fatigue syndrome met or equaled any listing and did not mention either impairment at this stage of the analysis.[2] However, the ALJ did reference both impairments elsewhere in the decision. The ALJ noted that Ms. Briere had an exercise test terminated in October 2019 "because of general fatigue." (TR 48). The ALJ also stated that, in a February 20, 2020 exam, Ms. Briere was noted to have diffuse pain and that all tender points were positive. (TR 49). The ALJ stated that Ms. Briere's examining

---

[2] As noted above, Ms. Briere's counsel did not advance any argument to the ALJ that any other medical condition, including fibromyalgia or chronic fatigue syndrome, met or equaled a listing.

physician noted that Ms. Briere "does not fulfill the 2010 ACR preliminary diagnostic criteria for fibromyalgia." *Id*. The ALJ also noted that Ms. Briere's joints were examined at that time and "were normal without pain, tenderness, swelling, deformity, deformity/sublaxation, and with full range of motion." *Id*. Finally, the ALJ noted that Ms. Briere's "fibromyalgia makes it hard to dress herself," and that "she currently does not drive due to tiredness." (TR 52).

The ALJ next found that Ms. Briere was unable to perform any past relevant work, including work as a caregiver, tutor, or childcare provider. (TR 52). However, the ALJ determined that Ms. Briere had the residual functional capacity to perform work that exists in significant numbers in the national economy. (TR 53). Specifically, based on the testimony of the VE, the ALJ determined that Ms. Briere could perform the requirements of representative occupations such as inspector, assembler of electrical accessories, or cafeteria attendant. *Id*. As a result, the ALJ determined that Ms. Briere was not disabled and not entitled to DIB or SSI. (TR 54).

V.    **LAW & ANALYSIS**

A.    **Standard of Review**

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations."

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

    **B.**   **Standard for Disability**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health*

9

*& Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[3]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 415 (6th. Cir. 2011). If the impairment meets or equals a listing and satisfies the durational requirement, the ALJ must find that the claimant is disabled. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 431 (6th Cir. 2014). However, the claimant must exhibit all elements of the listing; it is not sufficient that a claimant come close to meeting the requirements of a listing. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

---

[3] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

  **C.**  **Analysis**

Ms. Briere argues that the ALJ committed harmful error at Step Three because the ALJ failed to consider whether Briere's fibromyalgia or chronic fatigue syndrome medically equal a listing or combine with other impairments to medically equal a listing. For the following reasons, Ms. Briere waived those arguments by failing to properly develop them in her merits brief, and her arguments also fail on the merits.

  *1.*  ***Waiver***

As an initial matter, the Commissioner argues that Ms. Briere waived any argument that the ALJ should have considered whether her fibromyalgia or chronic fatigue syndrome equaled a listing by failing to adequately develop those arguments in her merits brief. I agree.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996-97 (6th Cir. 1997). In accordance with *McPherson*, courts have held that a plaintiff waives an argument that the ALJ failed to properly consider a listing where the plaintiff

11

does not present evidence demonstrating that the plaintiff satisfied the criteria for the listing. *See Fleming v. Astrue*, No. 1:09-CV373, 2010 WL 649742, at *4 (N.D. Ohio Feb. 19, 2010) (holding that plaintiff waived argument that fibromyalgia equaled Listing 14.09 where her brief presented "no evidence with regard to how or which of her fibromyalgia symptoms equal in severity any, much less all, of the criteria for inflammatory arthritis"); *Cheuvront v. Comm'r of Soc. Sec.*, No. 5:19-cv-00360, 2019 WL 7049106, at *15 (N.D. Ohio Dec. 23, 2019) (noting that plaintiff "arguably forfeited" argument that he met or medically equaled a listing by "articulating *some* criteria for the listings, but omitting specific references to record evidence that would support a finding that he met *all* the criteria") (emphasis in original); *Dakroub v. Comm'r of Soc. Sec.*, No. 15-12484, 2016 WL 5539760, at *9 (E.D. Mich. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 5405325 (E.D. Mich. Sept. 28, 2016) ("A claimant's failure to specifically detail, in a point-by-point fashion, how he or she meets a listing waives that argument.").

Ms. Briere argues that the ALJ should have determined whether her fibromyalgia medically equals a listing "such as Listing 14.09D." (ECF Doc No. 8, PageID # 1659). She similarly argues that the ALJ should have determined whether her chronic fatigue syndrome medically equals a listing "such as Listing 14.06B." *Id*. at PageID # 1660. However, Ms. Briere does not cite the criteria for either Listing 14.09D or 14.06B, let alone point to specific evidence in the record demonstrating that she satisfies all those criteria. Ms. Briere does elaborate on those arguments in her reply brief, and argues that there is a "substantial question" regarding whether her fibromyalgia and chronic fatigue syndrome medically equal a listing. (ECF Doc. No. 11, PageID # 1681). However, "[a]rguments should not be raised or only developed for the first time in a Reply Brief." *Albrecht v. Comm'r of Soc. Sec.*, No.1:14CV2116, 2015 WL 4985475, at *6 n.3 (N.D. Ohio Aug. 18, 2015); *see also Bender v. Comm'r of Soc. Sec.*, No. 11-CV-1546, 2012 WL 3913094, at *8 (N.D. Ohio Aug. 17, 2012), *report and recommendation adopted*, 2012 WL

3913091 (N.D. Ohio Sept. 7, 2012) ("It is well-established that a party should not raise new arguments in a reply brief."). Accordingly, I agree with the Commissioner that Ms. Briere has waived her arguments by failing to properly develop them in her merits brief.

### 2. *The ALJ's Step Three Analysis*

Even if Ms. Briere had not waived her arguments that the ALJ erred at Step Three, Ms. Briere's arguments fail on the merits. As noted above, at Step Three, the ALJ must "compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds*, 424 Fed. Appx. at 415. It is undisputed that the ALJ did not compare Ms. Briere's fibromyalgia or chronic fatigue syndrome to the requirements for any listed impairment at Step Three. Instead, Ms. Briere's fibromyalgia and chronic fatigue syndrome were encompassed only by a catch-all statement that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (TR 44). The question is thus whether the ALJ's failure to expressly analyze Ms. Briere's fibromyalgia and chronic fatigue system at Step Three constitutes reversible error. For the reasons set forth below, I conclude that it does not.

"[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson*, 579 Fed. Appx. at 432 (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). Instead, an ALJ should discuss a listing "where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson*, 579 F. App'x at 43. (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

It is the claimant's burden at Step Three to prove that an impairment medically equals a

listing. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). To meet that burden, a claimant must "present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004). A claimant "must do more than show that the ALJ's decision leaves open the question" of whether the claimant meets the listing. *Sheeks*, 544 F. App'x at 641. Instead, the claimant must "show that the open question is a *substantial* one that justifies a remand." *Id*. (emphasis in original).

Ms. Briere has not made such a showing here. As the Commissioner correctly notes, Ms. Briere did not mention her fibromyalgia or chronic fatigue syndrome before the ALJ, let alone argue that those impairments medically equaled Listings 14.09D or 14.06B.[4] "Where the claimant does not mention the particular Listing at the hearing before the ALJ, the Sixth Circuit has found that the ALJ is not obligated to discuss that particular Listing." *McGeever v. Comm'r of Soc. Sec.*, No. 1:18-CV0477, 2019 WL 1428208, at *7 (N.D. Ohio Mar. 29, 2019) (citing *Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015)) (per curium); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding no error where plaintiff "did not argue that he had a listed impairment at his administrative hearing, even though he was represented by counsel at that time"); *Mackey v. Comm'r of Soc. Sec.*, No. 16-6743, 2017 WL 6028679, at *5 (6th Cir. Aug. 23, 2017) (holding that ALJ did not commit reversible error in failing to address listing where plaintiff did not argue before ALJ that he satisfied the listing). Because Ms. Briere failed to raise her fibromyalgia or chronic fatigue syndrome at the hearing, the ALJ did not commit reversible error in failing to address Listings 14.06B or 14.09D.

---

[4] While the Commissioner correctly notes that Ms. Briere failed to raise Listings 14.09B or 14.06D before the ALJ, the Commissioner does not argue that Ms. Briere waived her arguments on that basis. Accordingly, I will consider the merits of Briere's arguments. *See Sheeks*, 544 Fed. Appx. at 641 (analyzing whether listing applied to claimant despite claimant's failure to raise listing at administrative level because "a potential forfeiture may itself be forfeited").

In addition, even where an ALJ does not include a detailed analysis at Step Three, a court should affirm so long as the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Although a close question, the ALJ did include sufficient factual findings elsewhere in the decision to support his conclusion at Step Three that Ms. Briere did not meet or equal either listing, particularly given Ms. Briere's failure to raise either impairment at the hearing.

Ms. Briere argues that the ALJ should have considered whether her fibromyalgia medically equals Listing 14.09D, which contains the following criteria:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D.

However, the ALJ discussed evidence elsewhere in his decision that would support the ALJ's conclusion that Ms. Briere's fibromyalgia did not medically equal Listing 14.09D. The ALJ stated that, in a February 20, 2020 exam, Ms. Briere was noted to have diffuse pain and that all tender points were positive, but that she "does not fulfill the 2010 ACR preliminary diagnostic criteria for fibromyalgia." (TR 49). The ALJ further noted that "[a]ll joints were examined and were normal without pain, tenderness, swelling, deformity, deformity/sublaxation, and will full range of motion." *Id*. The ALJ also noted that Ms. Briere cooks every night, walks (though only for a short distance), cares for her dog, shops in stores once a week, and cares for her children. (TR 51-52). That evidence supports the conclusion that Ms. Briere did not satisfy Listing 14.09D because she did not experience repeated manifestations of inflammatory arthritis with severe

15

fatigue and malaise and was able to carry out daily living activities.

The same is true for Ms. Briere's chronic fatigue syndrome. Ms. Briere argues that the ALJ should have considered whether her chronic fatigue syndrome medically equals Listing 14.06B, which contains the following criteria:

> Repeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.06B.

As with Ms. Briere's fibromyalgia, the evidence that the ALJ cited—including that Ms. Briere cares for her children and her dog, takes short walks, cooks daily, and shops in stores—sufficiently supports a conclusion that Ms. Briere did not satisfy Listing 14.06B because she did not exhibit repeated manifestations of undifferentiated or mixed connective tissue disease with severe fatigue, malaise, and limitation of activities of daily living. While it would have been preferable for the ALJ to specifically analyze Ms. Briere's fibromyalgia and chronic fatigue syndrome at Step Three, the error was harmless in light of the ALJ's discussion of those impairments elsewhere in the decision.

In her reply brief, Ms. Briere points to evidence that she argues supports her position that her fibromyalgia and chronic fatigue syndrome equaled Listings 14.09B and 14.06D, respectively. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL

16

4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"); *Lambert v. Comm'r of Soc. Sec.*, No. 5:08CV1908, 2010 WL 546756, at *6 (N.D. Ohio Feb. 11, 2010) ("contrary evidence does not invalidate an ALJ's determination so long as the ALJ found substantial evidence to support his or her determination- even if this Court disagrees with that outcome"). Accordingly, because the ALJ's Step Three analysis was supported by substantial evidence discussed elsewhere in the ALJ's decision, the presence of contrary evidence in the record does not warrant remand.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision. Accordingly, I do not address Ms. Briere's argument that the remand order should require the Appeals Counsel and/or the ALJ to call a medical expert to assist in determining whether Ms. Briere's fibromyalgia or chronic fatigue syndrome medically equal a listing.

Dated: February 24, 2023

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good**

**cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions
 *Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).